IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TRACI RUETER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:20 -CV-00030 -MAB |
| | ) | |
| CLUB FITNESS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Currently before the Court are Defendant Club Fitness, Inc.'s amended motion to dismiss for lack of jurisdiction (Doc. 8) and Plaintiff Traci Rueter's motion to remand (Doc. 14). Plaintiff also submitted a request for jurisdictional discovery, contained in her response to Defendant's motion to dismiss, to determine whether the Court has personal jurisdiction over the parties (Doc. 16, p. 7). For the reasons set forth below, Defendant's motion to dismiss for lack of jurisdiction is **DENIED**. Similarly, Plaintiff's motion to remand is also **DENIED**. Plaintiff's request for jurisdictional discovery is **DENIED AS MOOT**.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed this case in the Third Judicial Circuit of Madison County, Illinois on August 15, 2019 alleging six causes of action for breach of contract, specific performance, the Sale Representative Act, the Wage Payment and Collection Act, fraud, and

promissory estoppel stemming from Plaintiff's employment at and termination from Defendant's company (Doc. 1-1).

Defendant is a regional gym and health center that operates approximately twenty-three gym and health centers in Illinois and Missouri (Doc. 1-1, p. 1). Defendant contacted Plaintiff on or around October 2016 to see if Plaintiff would leave her employer, Gold's Gym, to work for Defendant as a Corporate Account Manager ("CAM") (Doc. 1-1, p. 2). In the CAM position, Plaintiff solicited and procured business for Defendant in exchange for a commission paid by Defendant (Doc. 1-1, p. 2).

On or around February 2017, Defendant and Plaintiff entered into a contract outlining Plaintiff's position. Defendant agreed to pay Plaintiff a commission of $20.00 per corporate employee and $10.00 per corporate "family ad-on" on all corporate memberships received from Plaintiff's procured business (Doc. 1-1, p. 2). By May 2017, Plaintiff alleges she was owed $2,500.00 for her work, which Defendant paid (Doc. 1-1, p. 2). By the end of June 2017, Plaintiff alleges she was owed $4,550.00, but was only paid $3,319.00. In July 2017, Plaintiff claims that she was owed $5,810.00, but was only paid $4,270.00. Plaintiff alleges this pattern of being paid less than she was owed by Defendant continued through June 2018 when her employment with Defendant ended (Doc. 1-1, pp. 2-4).

Defendant removed this case from the Circuit Court of Madison County on January 8, 2020 based on complete diversity jurisdiction pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332(a) (Doc. 1). In its notice of removal, Defendant outlined that Plaintiff is a citizen of Illinois while Defendant is incorporated in Missouri with its principal place of

business also in Missouri, so complete diversity exists between the parties (Doc. 1, p. 2). To satisfy the amount in controversy requirement of diversity jurisdiction, Defendant highlighted that Plaintiff requested damages for "commissions owed," as well as attorneys' fees and the cost of the lawsuit. In her complaint, Plaintiff  requested an unspecified amount exceeding $50,000 in damages (Doc. 1-1). Defendant, based on the complaint, calculated that the total Plaintiff seeks is upwards of $79,360.000 (Doc. 1-1, pp. 3-4).

On January 13, 2020, Defendant filed an amended motion to dismiss for lack of jurisdiction requesting the Court dismiss this action for lack of personal jurisdiction pursuant to Rule 12(b)(2) (Doc. 8, p.1). On February 5, 2020, Plaintiff filed a motion to remand this case to state court, arguing that the amount in controversy is not more than $75,000 (Doc. 14). Plaintiff filed a response to Defendant's motion to dismiss on February 18, 2020 (Doc. 16). Soon after, on March 2, 2020, Defendant filed a reply to Plaintiff's response to the motion to dismiss (Doc. 17).

## ANALYSIS

Before the Court are the two threshold issues of subject matter jurisdiction and personal jurisdiction. Both personal jurisdiction and subject matter jurisdiction are essential elements of a district court's jurisdiction and must be firmly established before a district court can determine the merits of the case. Subject matter jurisdiction is the court's authority over the category of the claim while personal jurisdiction relates to the court's authority over the parties themselves. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999). While subject matter jurisdiction has typically been thought to be more

fundamental, personal jurisdiction must also be established because "without which, the court is powerless to proceed to an adjudication." *Ruhrgas*, 526 U.S. at 584 (quoting *Employers Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937)). There is no jurisdictional hierarchy as to whether subject matter or personal jurisdiction must be adjudicated first. *Ruhrgas*, 526 U.S. at 588-599.

## I.      Subject Matter Jurisdiction

Before the Court addresses Defendant's motion to dismiss (Doc. 8), which goes to whether this Court has personal jurisdiction over the parties, the Court will first satisfy itself that the requirements of diversity jurisdiction are met and address Plaintiff's motion to remand (Doc. 14). In particular, the requirement that the amount in controversy exceeds $75,000 on the date of removal is at issue here. 28 U.S.C. § 1332(a). *See BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 551 (7th Cir. 2002) ("Removal was proper only if the amount in controversy exceeded $75,000 on the date of removal."). *See also McCready v. White*, 417 F.3d 700, 702 (7th Cir. 2005) ("Ensuring the existence of subject-matter jurisdiction is the court's first duty in every lawsuit.").

The amount in controversy is "determined by an evaluation of the controversy described in the plaintiff's complaint and the record as a whole." *Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*, 309 F.3d 978, 983 (7th Cir. 2002) (citation omitted). It is "the amount required to satisfy the plaintiff's demands in full . . . on the day the suit was removed." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 510–11 (7th Cir. 2006) (citation omitted).

As the party seeking to invoke federal diversity jurisdiction, Defendant bears the burden of showing by a preponderance of the evidence facts that suggest the amount in

controversy requirement is met. *Oshana*, 472 F.3d at 510–11 (citation omitted). A good-faith estimate of the stakes is acceptable if it is plausible and adequately supported by the evidence. *Id.*; *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011)

In evaluating the amount in controversy, the Court looks first to the allegations of Plaintiff's original complaint that was removed to federal court. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 276 (1977) ("'The sum claimed by the plaintiff controls if the claim is apparently made in good faith.'" (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938); *Andrews v. E.I. Du Pont De Nemours & Co.*, 447 F.3d 510, 514–15 (7th Cir. 2006) ("Typically, we can rely on the amount alleged in the complaint to determine whether the amount in controversy is satisfied . . . .")).

Here, the original complaint details specific amounts of wages for the fifteen months, from April 2017 until June 2018, that Plaintiff was employed by Defendant (Doc. 1-1, pp. 2-4). When totaled, Plaintiff alleges she was owed approximately $126,980.00, but was only paid $47,620.00, with approximately $79, 360.00 owed in missing commission. While Plaintiff does not outline this specific amount in her original complaint, she requests, for each of her six claims, "an amount in excess of Fifty Thousand Dollars ($50,000.00), plus costs of suit" (Doc. 1-1, pp. 5-11). Additionally, in her motion to remand, Plaintiff admits that the amounts alleged for commissions owed in her original complaint exceed $75,000.00, but "agrees to not seek more than $75,000.000 in commissions owed so this is a matter rightfully remanded to state court" (Doc. 14, p. 3). Plaintiff attached a signed affidavit to support this point (Doc. 14-1).

Post-removal events to reduce the amount in controversy do not negate the establishment of a jurisdictionally sufficient amount at the time of removal. *St. Paul,* 303 U.S. at 289-90; *Rising-Moore v. Red Roof Inns, Inc.,* 435 F.3d 813, 816 (7th Cir. 2006). Thus, even if a plaintiff makes an irrevocable promise after the case is removed to not accept more than the jurisdictional minimum, the Court would not be justified in remanding the case if federal jurisdiction existed at the time of removal *St. Paul,* 303 U.S. at 292-93; *Rising-Moore*, 435 F.3d at 816; *In re Shell Oil Co.,* 970 F.2d 355, 356 (7th Cir. 1992) (*per curiam).* Furthermore, limiting a prayer for relief does not lower the amount in controversy because, under both federal and Illinois rules, a prayer for relief does not limit the awardable relief. *See* Fed. R. Civ. P. 54(c) ("Every…final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"); 735 ILCS 5/2-604 (eff. To Dec. 31, 2019) ("the prayer for relief does not limit the relief obtainable"), *repealed by* Ill. Pub. A. 101-403 § and *replaced by* 735 ILCS 5/2-604.2(c) (eff. Jan. 1, 2020) ("the remedies requested from the court do not limit the remedies available.").

Here, Plaintiff's attempt to side-step federal jurisdiction post-removal by refusing to seek more than $75,000.00 is not sufficient for the Court to conclude it does not have subject matter jurisdiction over the parties. Plaintiff would have had to submit that affidavit before Defendant removed the case as no post-removal stipulation to limit the amount Plaintiff seeks is justification for remanding the case now *as long as* this Court had jurisdiction at the time of removal. To satisfy the amount in controversy requirements, all Defendant had to do was establish by a preponderance of the evidence

Page 6 of 13

facts showing that more than $75,000 was at issue on the day of removal (January 8, 2020, *see* Doc. 1). Defendant has met that burden. Before this Court denies Plaintiff's motion to remand (Doc. 14), it must determine whether the Court had jurisdiction at the time of removal now that the Court has determined the amount in controversy has been satisfied.

## II.    Personal Jurisdiction

When a defendant moves to dismiss based on lack of personal jurisdiction, as Defendant did here in its amended motion to dismiss (Doc. 8), the burden falls on the plaintiff to demonstrate that jurisdiction does exist. *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697 (7th Cir. 2015). When a court determines personal jurisdiction based on written submissions without holding an evidentiary hearing, the plaintiff must establish a *prima facie* case of personal jurisdiction to survive dismissal. *Id.; Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002); *see also Snap-On Inc. v. Robert Bosch, LLC,* No. 09 C 6914, 2013 WL 54238544, at *4 (N.D. Ill. Sept. 26, 2013). In deciding whether the plaintiff has met the *prima facie* standard, a court is not limited to the pleadings and may consider affidavits and other outside materials. *Purdue Research Found. V. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The plaintiff "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.* (quoting *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983)).

Personal jurisdiction is proper when it follows both the state's and federal constitutional principles of due process. *See uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). The Illinois long-arm statute provides that an Illinois court may exercise jurisdiction on any basis "now or hereafter permitted by the Illinois Constitution

Page 7 of 13

and the Constitution of the United States." 735 ILCS 5/2-209(c). The Seventh Circuit Court of Appeals has suggested that there is no operative difference between Illinois and federal due process limits on the exercise of personal jurisdiction. *See Hyatt Int'l Corp.*, 302 F.3d at 715 (citing *RAR, Inc., v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997)); *see also Rollins v. Ellwood,* 565 N.E.2d 1302, 1316 (Ill. 1990) (construing the due process guarantee in the Illinois Constitutional to mean that "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect the interests located in Illinois."). Thus, the exercise of personal jurisdiction must comport with the due process guarantees of the Fourteenth Amendment. *Id.*

To make a *prima facie* case for personal jurisdiction, the plaintiff must allege facts supporting the reasonable inference that an out-of-state defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington, Office of Unemployment Comp. & Placement*, 326 U.S. 310, 319 (1945). Courts have interpreted this standard to mean that " '[t]he defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Additionally, the maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Kipp,* 783 F.3d at 697 (citing

*Int'l Shoe Co.*, 326 U.S. at 316). "Courts recognize two types of personal jurisdiction: general and specific." *Id.* (citing *Daimler AG v. Bauman,* 134 S.Ct. 746, 751 (2014)).

## A. General Personal Jurisdiction

General jurisdiction allows a court to hear any and all claims against foreign (sister-state or foreign-country) corporations when their "affiliations with the State [in which suit is brought] are so 'continuous and systematic' as to render them essentially at home in the forum state." *Daimler,* 134 S.Ct. at 754 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S.Ct. 2846, 2851 (2011)). Determining whether a corporation is "at home" in a particular state "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide" because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 762 n.20. Indeed, the Supreme Court has identified only two places where a corporation is "at home:" the state of the corporation's principal place of business and the state of its incorporation. *Kipp,* 783 F.3d at 698 (citing *Daimler,* 134 S. Ct. at 760). A "substantial, continuous, and systematic course of business" is no longer sufficient "'to support the demand that the corporation be amenable to suits unrelated to that activity'." *Id.*; *Daimler,* 134 S.Ct. at 757 (quoting *Int'l Shoe Co.,*326 U.S. at 318). The Seventh Circuit has cautioned that general jurisdiction "should not lightly be found." *Kipp,* 783 F.3d at 698.[1]

---

[1] Courts have repeatedly emphasized that only in an "exceptional case" would general jurisdiction be available anywhere other than the place of incorporation and principal place of business. One example of such an exceptional case is *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437 (1952), where the defendant, a silver and gold mining operation incorporated under the laws of the Philippines, could be sued in Ohio because a world war forced the defendant to temporarily relocate its principal place of

Defendant argues that it does not have sufficient contacts with Illinois to "render [it] essentially at home" in the state (Doc. 8, p. 2). Defendant argues that its in-state business in Illinois alone does not permit general jurisdiction since Defendant is a Missouri corporation with its principal place of business in Missouri (Doc. 8, pp. 1, 2-4). Plaintiff argues the opposite—that Defendant has engaged in continuous and substantial business activity within Illinois, including operating multiple gyms, paying taxes, and hiring Illinois residents as gym employees, so general jurisdiction is appropriate (Doc. 16, p. 6).

General jurisdiction is defined narrowly, so the Court agrees with Defendant that it cannot exercise general personal jurisdiction over Defendant in this case. Defendant is not incorporated in Illinois, nor is its principal place of business in Illinois. While Defendant maintains and operates some gyms in Illinois, that alone is not enough for the Court to find that Defendant is "at home" in Illinois when its state of incorporation and principal place of business are outside of Illinois.

## B. Specific Personal Jurisdiction

Specific personal jurisdiction requires an affiliation between the forum and the underlying controversy—*i.e.,* an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear,* 131 S. Ct. at 2851. Specific jurisdiction arises where an out-of-state "defendant has 'purposefully directed' his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774

---

business to Ohio due to enemy activity abroad. *Id.* at 756 and n. 8.. *See also Guaranteed Rate, Inc. v. Conn,* 264 F.Supp. 3d 909, 915 (N.D. Ill. 2017).

(1984), and the litigation results from alleged injuries that 'arise out of or relate to those activities,' *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)." *Burger King Corp.*, 471 U.S. at 472-73; *Daimler*, 134 S.Ct. at 761. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendants, the forum, and the litigation'." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204 (1977)).

The Supreme Court has cautioned that not just any contacts with the forum state will suffice: "[f]or a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121 (emphasis added). Moreover, contacts with the forum that are "random," "fortuitous," or "attenuated," or that result from the "unilateral activity of another party or third person" are not sufficient to establish personal jurisdiction. *Burger King*, 471 U.S. at 475. Lastly, the relationship between the defendant and the forum "must arise out of contacts that the defendant *himself* creates with the forum ..." *Walden*, 134 S. Ct. at 1122 (citations and quotations omitted).

Defendant argues that this Court does not have specific personal jurisdiction because Plaintiff's complaint offers no causes of action that arise out of Defendant's contacts in Illinois (Doc. 8, p. 5). Meanwhile, Plaintiff argues that Defendant has purposefully directed its activities at Illinois because Defendant owns and operates several gyms here, advertises to Illinois residents, and that Plaintiff, during her employment with Defendant, sold memberships to Illinois residents for their Illinois gyms and health centers (Doc. 16, pp. 6-7).

The Court agrees with Plaintiff that it has specific jurisdiction over the parties. At this stage, Plaintiff must only establish a *prima facie* case that specific jurisdiction exists and she has done just that. She is seeking missing wages for activities that occurred in both Missouri and Illinois from contacts that Defendant created within Illinois. Plaintiff sought gym memberships from people in Illinois for Defendant's Illinois gyms and is now seeking payment for those commissions. These were not random or fortuitous connections to Illinois—these were connections driven by Defendant's business within the forum.

Additionally, throughout Defendant's arguments that this Court does not have personal jurisdiction over the parties, Defendant repeatedly cited to cases, which while helpful to apprise the Court of the appropriate legal standards, are not factually analogous to the present case as they involve businesses and corporations that operate nationally and worldwide. For example, Defendant relies heavily on the arguments and standards from *Daimler AG v. Bauman*, *Livingston v. Hoffman-La Roche, Inc.*, *Bristol-Myers Squibb Co. v. Sup. Ct. of Cali., San Fran.*, and *Guaranteed Rate, Inc. v. Conn.*[2] Each of these cases involves a company that operates on a much larger scale than Defendant, so the courts were mindful of that in determining whether jurisdiction was appropriate with

---

[2] In *Daimler*, twenty-two Argentinian citizens sued a German public stock company that operated worldwide in a California federal court. *Daimler*, 134 S.Ct. at 748. In *Livingston*, the court analyzed whether it had jurisdiction over a prescription drug company that manufactured, distributed, and marketed the prescription acne medication, Accutane, nationwide. *Livingston v. Hoffmann-La Roche, Inc.*, 293 F.Supp.3d 760, 762-763 (N.D. Ill. 2018). *Bristol-Myers* and *Guaranteed Rate*, similarly, addressed whether the courts had jurisdiction over large, nationwide companies. *See Bristol-Myers*, 137 S.Ct. at 1775; *Guaranteed Rate*, 264 F. Supp. 3d at 910.

each of those courts. Defendant is not a national or worldwide company; rather, Defendant runs gyms and health centers that are only in Missouri and Illinois. A core tenant of personal jurisdiction is the Court's desire to not exercise jurisdiction over companies that could not foresee being haled into that Court for adjudication. It is not abnormal to think Defendant would be haled into Court in Illinois for a variety of cases that could arise from Defendant's business and activities in the State of Illinois. Rather, that is entirely foreseeable.

Accordingly, the Court has specific personal jurisdiction over the parties, which in turn means that it has the authority to rule on Plaintiff's motion to remand as well.

## CONCLUSION

For the above-stated reasons, Defendant Club Fitness, Inc.'s amended motion to dismiss for lack of personal jurisdiction (Doc. 8) is **DENIED** since this Court has personal jurisdiction over the parties. Similarly, Plaintiff's motion to remand is also **DENIED** (Doc. 14) because the amount in controversy was appropriate at the time of removal and complete diversity exists between the parties pursuant to 28 U.S.C. § 1332(a). Because the Court has personal jurisdiction over the parties, Plaintiff's request for jurisdictional discovery is **DENIED as MOOT** (Doc. 16, p. 7).

IT IS SO ORDERED.

DATED:   June 23, 2020

s/   Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**